UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGE M. LENIART

CASE NO. 3:11-cv-1635 (MPS)(WIG)

VS.

PETER MURPHY ET AL.,

SEPTEMBER 12, 2013

FILED 2013 SEP 18 A 11:3 [stamp]

PLAINTIFF'S SUPPLEMENTED MOTION TO APPOINT COUNSEL

Plaintiff, George M. Leniart, pursuant to §1915, requests This Court appoint counsel to represent him in this case for the following reasons.

1. This fourth motion is supplemented with exhibits which bring forth the likely merit contained in count four of his complaint.

2. The issues involved in discovery are becomming extremely complex in this case for plaintiff to understand or research, as plaintiff is confined in his cell 22 hours a day and has extremely limited access to the library. Twice a month at most.

3. Plaintiff has talked with I.L.A.P. Atty Richard Cahill, who is only for the limited purpose helping plaintiff try to obtain affidavits from some inmate witnesses who are still confined, others have been released and plaintiff has no way to track them down.

4. Plaintiff's case requires depositions because of the very complex issues and defendant's evasive denial tactics of avoiding the discovery in this case.

5. Plaintiff's case has become more complex after defendant's admissions that critical video surveillance evidence was not preserved after plaintiff gave timely notice, and other video and audio evidence was manipulated and obscured, as claimed in my last motion to appoint counsel, which this court denied without prejudice as the court was unable to determine the likely merit at that time.

Wherefore, this Honorable Court should appoint counsel to represent the plaintiff as this court is in a better position to assess the likely merit contained in Count Four of the Plaintiff's supplemental complaint.

Respectfully Submitted,
the Plaintiff,

GEORGE M. LENIART #250010
900 Highland Ave
Cheshire CT. 06410

<u>CERTIFICATION</u>

I certify that a copy of the foregoing has been mailed this 12th day of September 2013. To:

STEVEN R. STROM
Robbert Dearington
110 Sherman St.
Hartford CT 06105

GEORGE M. LENIART

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GEORGE M. LENIART                    CASE NO. 3:11-cv-1635 (MPS)(WIG)

VS.

PETER MURPHY ET AL.              SEPTEMBER 12, 2013

DECLARATION IN SUPPORT OF MOTION TO APPOINT COUNSEL

Plantiff GEORGE M. LENIART states:

1. I am the pro se plaintiff in the above-entitled case. I make this declaration in support of my motion to appoint counsel.

2. I apologize to the court if my motion seems redundant, I am unlettered in law. As I did not know I could put documents which support my claims infront of the court at this time to buttress my motion. I have now appended exhibits in support of my claims in count four of my opprative complaint.

3. I provide the court with several statements from some of the Inmate's who witnessed the incidents I claim in count four of my complaint. [Exhibit A] attached here to.

4. I provide the court with defendant Warden Murphy's Admissions and interrogatory responses Admitting that the video of my Alleged incident in count Four was not preserved [Exhibit B] Attached here to, Murphy's Admission p. 3-4 paragraphs 11-12 Also attached in Exhibit B, is my inmate request to preserve the video and my inmate remedies Also notifying defendants to preserve the video. Defendant's claims are incongruous with evidence.

5. Defendant's had a policy in place to preserve evidence for use in present and future litigation. [Exhibit C] Attached hereto also in this Exhibit is a letter from the Attorney General's office recognizing a 30 day policy.

6. Defendant Warden Murphy had a policy at Walker CI which was hung in the unit and correctional officer's would refer inmates to when they complained about them reading their legal materials during cell searches. See [Exhibit D] Attached hereto.

7. This is a complex case because it contains several different legal claims, with each claim involving a different set of defendants.

8. This case requires extensive discovery and depositions of a number of witnesses some are inmates at other facilities I'm able to pay for a half day of depositions with the help of family and friends, but I expect to have major problems with security issues here at Cheshire CI. And I will run into the problem of getting the inmates here to depose them.

9. Most of the discovery I received from the defendants is so redacted it losses its evidentiary value, they are claiming security issues with there documents, an Attorney would be able to retrieve them in correct form [Exhibit E]. These documents are critical to issues in count five my complaint.

10. I am housed at Cheshire CI. where I am locked down 22 hours out of the day except for recreation a few times a week. my access to the library is extremely limited to a couple times a month.

11. I am awaiting a surgery on my right sholder from injuries I sustained from being hand cuffed wrong, which has nothing to do with this instant claim, however, I will lose the ability to use my right arm and hand as it will be in a sling through-out a two month healing period and I will be in extreme pain which will likely cause problems for me to respond to litigation. I am going to ask defendants counsel to inquire with the medical unit regarding my medical issues during my next schedulled deposition on September 27, 2013. This may require a temporary stay in this case. I will try to stipulate with defendants.

12. The issues of most concern at this point is my inability to produce a copy of the video and audio evidence for the court to review. For two reasons (1) It contains evidence of the false disciplinary charge I received, and which caused me to be transferred in retaliation for bringing these claims, and (2) to show the court that the evidence is manipulated and obscured to delete its evedentiary value.

13. I do not understand the complex issues in discovery that have been comming up as the defendants have not provided the discovery I have sought for months. They only provide superficial documents from the wrong dates and times to make the court believe that they are moving in good faith.

3.

14. As set forth in the memorandum of law submitted with this motion, these facts, along with the legal merit the court can assess in plaintiff's count four, and information set forth in my previous motions to appoint counsel support the appointment of counsel in this case.

Wherefore, the plaintiff's motion for appointment of counsel should be granted.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my ability and belief.

Signed this 12th day of September 2013.

The Plaintiff

GEORGE M. LENIART #250010
900 Highland Ave
Cheshire CT 06410

CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed this 12th day of September 2013, to:

STEVEN R. STROM
Robbert Dewington
110 Sherman St
Hartford CT 06105

GEORGE M. LENIART

4.

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGE M. LENTANT                           CASE NO. 3:11-cv-01635(MPS)

V.

WARDEN PETER MURPHY ET AL.,                 APRIL 27, 2012

A F F I D A V I T   O F   E D G A R   S O L A R

I, Edgar Solar #260539, being duly sworn, deposes and states that:

1. During March of 2010, I was a pretrial inmate being held
in the Walker Correctional high bond unit, in a cell directly
across from #44 cell.

2. Sometime at the end of March our block was on lockdown
so workers could replace the lights.

3. Sometime during the late morning as I was standing in my
door looking out watching everything going on in the unit, I
seen Officer Coachman, inside cell #44. I seen Coachman, reading
through all the inmate's legal papers that were inside manila
envelopes and then putting some of the papers into a brown bag,
than afterwards start trashing the cell throwing the papers
all over the floor.

4. I witnessed Coachman, arguing with George, saying he needs
to stop filing law suits and grievances, he said, "you know
what we do to people who file paperwork around here" this
argument was very loud and most of the block could hear it.

5. When officer Coachman, exited the cell he had the brown
bag with the paperwork, he then went to the end of the teir
and began emptying everything into the trash can infront of
the other officer's, who then emptied bottles of cleaner in

the same trash can, they were all laughing and standing around.

6. When the inmates from #44 cell returned to their cell, I seen Officer Coachman arguing with the persons in #44 cell, as he slammed the door shut and walked away.

7. When the top tier was released for one o'clock recreation I seen Officer Flemming and Perez, inside cell #44 shaking down again, I remember this because it was unusual.

8. After what seemed like 20 minutes, the Officer's exited the cell with a bunch of paper folders, and then immediately left the unit.

I have read the foregoing and it is true and accurate to the best of my knowledge and belief.

_Edgar Solar_
Edgar Solar #260539
1153 East St. South
Suffield CT. 06080

SUBSCRIBED AND SWORN TO BEFORE

ME THIS 27 DAY OF APRIL 2012.

Joseph McGuire
NOTARY PUBLIC
Commission Expires 3/31/2017

2

FileCopy

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GEORGE M. LENHART                          CASE NO. 3:11-CV-1635(SRU)

-V-

WARDEN PETER MURPHY ET AL.,                MAY 4, 2012

A F F I D A V I T   O F   E R I C K   B E N N E T T

I, Erick Bennett #371221, being duly sworn, deposes and states:

1. I was an inmate in the Walker CI. high bond unit during the month of March 2010. I was in a cell right across from George's cell.

2. I do not know George, other than from being in the same unit for a few months, during this time George, was having a lot of issues with officer's reading is court papers.

3. Sometime in March 2010, when workers were fixing the lights we had to stay in our cells.

4. I observed Officer Coachman in 44 cell reading through all the legal folders he took out of the locker that George was taking to court every day, Coachman was talking shit to George because of law suits George was filing. A short time later I seen two other officer's go into the same paperwork and leave the cell with it, they left the block and George was flipping out, George and Coachman also had a loud argument right before all this happened, and when Coachman left he threw all the papers all over the cell then left laughing.

5. When Coachman entered the cell he was in there for a long time and when he left he took a bag of papers he took from the folders he was looking through

6. I seen him then leave the cell and empty the bag into the garbage can at the end of the tier, then walk back to George's cell and start talking shit.

7. When we all came out for lunch George grabbed the garbage can and brought it to his cell and removed what ever was thrown out by Coachman.

8. When we all came out for top tier recreation, two more correctional officer's went to George's cell and shut the door and remained inside there for a while.

9. After the Officer's left with a bunch of envelopes and left the unit.

10. George was trying to see the counselor or captain Patz, but staff was not available, I remember this because George was telling the story to others as he was walking around mad.

I have read the foregoing and it is true and accurate to the best of my knowledge and belief.

Erick Bennett #377227
M.W.C.I.
1153 East Street South
Suffield CT. 06080

SUBSCRIBED AND SWORN TO BEFORE

ME THIS 4 DAY OF MAY 2012.

Joshua McGuire
NOTARY PUBLIC
My Commission Expires 3/31/2017

2

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GEORGE M. LENIART                    CIVIL NO. 3:11-CV-1635

                    -VS-

WARDEN PETER MURPHY ET AL.,           OCTOBER 8 ,2012


          A F F I D A V I T   O F   B R Y A N T   S M I T H

I Bryant Smith, being duly sworn, deposes and states:

1. During the month of March and April 2010, I was housed at
the Walker CI. high bond unit.

2. I recall when the jail was having new lighting put in all
the cells and a incident occured with an inmate on the top teir,
at that same time I did not know his name, but after seeing
the numerous news reports regarding his case I learned his
name was George.

3. At that time there was a corrections officer named Coachman,
who was arguing with George about reading his and his cell mates
legal paperwork, they were upset and could be heard accross
the whole block, so it caught my attention.

4. I watched Coachman, screaming at George through his cell
door afterwards and remember it was something about George suing
the police and correctional officer's, also Coachman was calling
George a piece of shit for doing it, and thats why he trashed
their cell.

5. I also remember seeing George drag a trash can to his cell
and seeing George trying to dry off his paperwork during rec,

6. I then seen correctional officer's Perez and Fleming go into 44 cell during rec and take manila folders out of the lockers and read all through the paperwork for a while, then they left the block with some of the folders and George got extremely angry.

7. While I was held at Walker CI. I was brought to court numerous times at 3am in the morning, I sometimes brought legal papers to go over with my attorney, I was always told that all my hand written notes would be read or they were not going to court with me.

8. I was told to place all my folders on the metal table to be searched and then place me in a holding cell down the hall, I have been to a lot of different jails and never had to leave my legal stuff out of my sight like this, they would be going through our legal stuff for a long time only after everyone was locked in the bull-pens, then they would bring it back into our sight when they were done.

9. Two or three times I was missing things I had wrote to my attorney, but I never wrote this up because it was not anything I was concerned with, and I did not want any trouble with the correctional officers.

10. I remember another inmate that was flipping out on a spanish officer named Villarini, because of somthing to do with taking his legal papers, I know this inmate filed a complaint against him, but I never heard what happened.

2

11. The whole time I was going to court while at Walker CI,
there was always a lot of issues in the A/P room regarding the
officers reading peoples legal paperwork that was being brought
to court, especially in the 3am court trips.

I HAVE READ THE FOREGOING AND IT IS TRUE AND CORRECT TO THE
BEST OF MY KNOWLEDGE AND BELIEF.

BRYANT SMITH

SUBSCRIBED AND SWORN TO BEFORE

ME THIS _12_ DAY OF OCTOBER 2012.

LATISHA M DAVIS
Notary Public
My Commission Expires 5/31/2015
NOTARY

3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGE M. LENIART                          CASE NO. 3:11-CV-1635

     -VS-

WARDEN PETER MURPHY ET AL.,                OCTOBER  3 ,2012


A F F I D A V I T   O F   W I L F R E D O   F R A N C O


I WILFREDO FRANCO #294512, BEING DULY SWORN, DEPOSES AND STATES:


1. I was an inmate housed at the Walker CI, high bond unit,
and was brought to the New Haven Court House on multiple court
dates during 3am. court runs.

2. I was required to proceed to the A/P room numerous times
at 3am. I have knowledge of the normal routine and procedures
that inmates are subjected to during these early morning court
runs.

3. When I enter the A/P room I am ordered to place my legal
materials on the table infront of the main holding cell after
I am given a bag breakfeast, after eating, I am strip searched
and placed into a large bull-pen down the hall out of sight
of my leagl materials that I am ordered to leave on the table,
only after all inmates are strip searched and locked up according
to their court locations are the legal materials searched out
of my sight, and then brought back infront of the bull-pen where
I can see them.

4. I have seen correctional officers reading inmate's legal
materials including my own, they routinely inform all inmate's
that any hand written materials are going to be read to determine
if they are court related, I had no way of telling if anything
is taken until I arrive in the New Haven lock up, where my legal
materials are returned to me.

5. I have witnessed many inmates complaining about how their
legal materials were handled and sometimes read during these
early morning court trips. I have had my court documents come
up missing a few times.

6. I have seen more than several video cameras located in the
A/P room, specifically one that is pointed directly at the
stainless steel table where the officers search the legal
material being brought to court, there is also a camera that
is on the wall directly above the first bull-pen where we are
first fed in the morning that looks towards the table and bull

pens down the hall, in all there is complete coverage of the
entire A/P room.

_Wilfredo Franco_ 10/12/12
Wilfredo Franco #294512

SUBSCRIBED AND SWORN TO BEFORE ME

THIS __12__ DAY OF OCTOBER 2012.

LATISHA M DAVIS
Notary Public
My Commission Expires 5/31/2014

_CCN_
NOTARY

2

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GEORGE M  LENIART　　　　　　　　　:　　CIVIL NO. 3:11CV01635 (MPS)

V.　　　　　　　　　　　　　　　　:

PETER MURPHY, ET AL.　　　　　　:　　MAY 20, 2013

### DEFENDANT MURPHY'S RESPONSES TO PLAINTIFF'S
### SECOND REQUEST FOR ADMISSIONS

1.　　Admit, you took no affirmative actions to prevent or investigate the plaintiff's alleged complaints of subordinate staff reading, confiscating, photocopying and disseminating other than signing the inmate remedy after you were notified of the first 10-20-08 incident.

Response: Deny. Deny any and all wrongdoing by staff.

2.　　Admit, you notified Capt. John Patz, by copy of a inmate request you received from the plaintiff on 11-25-08, notifying him of staff allegedly reading, confiscating and disseminating privileged legal materials, imposing a duty on the Capt. To further investigate and prevent any future misconduct.

Response: Deny  Plaintiff did not supply copy of request

3.　　Admit, that Inmate Reynolds #300735, and Inmate Ian Cook #340812, were housed at the Walker CI high bond Unit C-2-1 during 2008-2010 with the change of Capitol felony and were not designated high security inmates, being subjected to the same imposed and mandated treatment as plaintiff.

Response:　　Objection; this is security information related to other inmates as to their security classification; not relevant nor reasonably calculated to lead to admissible

evidence. Any information about other inmates is personal and private to them vis a vis plaintiff; assumes facts not admitted, and thus is denied.

    4.    Admit, that plaintiff was moved into a different cell with a different cellmate roughly every 30 days, while he was held in the C2 Unit at Walker CI between 4-2-08 and 9-22-09.

**Response:** Deny for the reason that Warden Murphy is not personally involved in cell moves.

    5.    Admit, that during a high security shakedown and also during any random shakedown, inmates are removed from their cell and prevented from viewing officers conducting shakedowns and would not know if their privileged legal materials were confiscated or read or copied unless door was open and obscured by other inmates.

**Response:** Admit. Inmates are supposed to be removed from the area. Deny that inmates' materials in the cell are privileged. Deny the materials are confiscated, read or photocopied.

    6.    Admit, that you signed the Remedy disposition of inmate Timothy Cote, who also alleged issues of his privileged legal materials being read and confiscated by officers in the Walker A/P room during the same time period as plaintiff.

**Response:** Objection. This pertains to another inmate and it is denied for safety and security reasons. Inmates are not to know of the administrative remedies of other inmates. Not relevant nor likely to lead to admissible evidence.

7.    Admit, that the video surveillance of the alleged incident involving the reading, seizing and confiscation of privileged legal documents in the Walker CI A/P room on 10-20-08, has not been preserved.

**Response:**    Admit video surveillance was not preserved. No timely request for such video was received. Deny that materials are read, seized or confiscated.

8.    Admit, that the video surveillance of the second incident alleged to have occurred on 11-17-08, involving the reading, seizing and photo copying of privileged confidential legal materials in the Walker CI A/P room has not been preserved.

**Response:**    Admit video surveillance was not preserved. No timely request for such video was received. Deny that materials are read, seized or confiscated.

9.    Admit, that you, yourself personally never reviewed the video surveillance of any of the alleged dates plaintiff makes claims his attorney-client privileged legal materials were read, confiscated and/or disseminated.

**Response:**    Admit video surveillance was not preserved. No timely request for such video was received. Deny that materials are read, seized or confiscated

10.    Admit, that you were notified that the video was reviewed allegedly by another staff member and plaintiff's allegations could not be substantiated.

**Response:**    Deny. Objection as to vagueness; lack of time frame and lack of supplying and written responses by the warden.

11.    Admit, that the video surveillance plaintiff requested be preserved within 30 days of the alleged incident on 3-31-10 were not preserved.

3

**Response:**      Admit video surveillance request was received 4/13/10; a response was sent to plaintiff and plaintiff never responded. Deny that materials are read, seized or confiscated.

12.     Admit, that the video surveillance plaintiff requested be preserved within 30 days of the alleged incident on 4-1-10, were not preserved.

**Response:**      Admit video surveillance was not preserved. No video was located. Deny that materials are read, seized or confiscated

13.     Admit, the document appended hereto, as Exhibit A, is a genuine notice that was posted in all the Walker CI Units, the document is dated 3-18-08 and states that correctional staff can inspect and review confidential legal materials held in inmates housing cells.

**Response:** Denied for the reason that no exhibit A was appended to plaintiff's request. Deny that materials held by inmates in cells are confidential; staff can inspect and review all areas and contents of an inmate's cell for safety and security reasons.

14.     Admit, that the document appended hereto as Exhibit B, is a genuine true copy of an inmate request received by you from plaintiff notifying you to preserve the C1-Unit video on 3-31-10 and 4-1-10, am shift between 7am – 3pm showing staff misconduct.

**Response:**      Deny. No Exhibit B is appended to plaintiff's request.

15.     Admit, that the document appended hereto, as Exhibit C, is a genuine true copy of a document dated 12-10-09, produced by the office of your counsel, office of

4

Atty General, notifying plaintiff that such video tapes ate kept only (30) days unless they are related to a specific incident or a request is made within (30) days to preserve them.

**Response:**          Deny. No exhibit C was appended to plaintiff's request.

16.   Admit, that you were aware that there was pending litigation involving the issues plaintiff alleges to have occurred on 10-20-08 and 11-21-08, involving the confiscation, reading, and dissemination of plaintiff privileged legal materials in the following months.

Response.   Deny, prior to receiving a copy of this lawsuit. Admit after receiving the lawsuit; deny anyone confiscated read or disseminated plaintiff's legal materials.

17.   Inmates in the Walker High Bond Units in 2008 through 2010, were required to keep their ID cards in the door window in order for staff to properly identify inmates during counts.

**Response:** Admit.

18.   You have received other complaints by inmates regarding staff issues regarding how their privileged confidential legal materials were being handled in the A/P room.

Response:          Objection; not relevant nor likely to lead to admissible evidence; deny that inmates' materials are privileged or confidential if they are maintained by an inmate in his cell or in storage; for the safety and security of staff, inmates and the public all materials are inspected for contraband prior to the inmate going to court.

19.   The Police were notified regarding the alleged incident between Counselor Sarah Skribiski and plaintiff.

5

**Response:** Deny. The warden did not notify CSP. The allegation by plaintiff is totally bogus and completely fabricated. There was no reason to notify as there was no misconduct nor was there an "incident," and thus it is denied.

20.    It is policy and procedure to notify law enforcement of any alleged sexual activity between a staff member and a ward.

**Response:** Admit. However no such "activity" is alleged to have taken place; there was no complaint of a sexual nature; there was absolutely no evidence whatsoever to corroborate plaintiff's statement.

21.    There was a revised memorandum posted that replaced the document described in Admission #13 in the end of 2008.

**Response:**           Denied for the reason that plaintiff failed to supply any memorandum as he references.


                              DEFENDANTS
                              Peter Murphy, Et Al.

                              GEORGE JEPSEN
                              ATTORNEY GENERAL


                    BY:  _____
                              Steven R. Strom
                              Assistant Attorney General
                              110 Sherman Street
                              Hartford, CT 06105
                              Federal Bar #ct01211
                              E-Mail: steven.strom@ct.gov
                              Tel.: (860) 808-5450
                              Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this

_____ day of May, 2013 to:

George M. Leniart, Inmate #250010
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

_____
Steven R. Strom
Assistant Attorney General

7

## Inmate Request Form
### Connecticut Department of Correction

CN 9602
Rev. 9/3/02

RECEIVED

Inmate Name G. LENIART

Inmate no. 250010

Facility WAlKer CI

Housing unit & Cell # CI-42

Date 4·6·10

Submitted to WArden Murphy

**Request**

Notice: informing you to retain Any, And All Video recordings of CI-Unit on 3-(3)-10 and 4-(1)10 AM SHIFT 7am-3pm.

(continue on back if necessary)

**Previous Action Taken**

(continue on back if necessary)

Acted on by (print name)

Title

Action Taken and/or Response

(continue on back if necessary)

Staff Member Signature

Date

# CONFIDENTIAL
(FOR OFFICIAL USE ONLY)

Inmate name: George Leniart

Inmate number: 250010       Housing: C1 – 41

## SECTION 4                STATE THE PROBLEM AND REQUESTED RESOLUTION

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT. Regarding the impediment of my last attempt to use the inmate Remedy System on 4-6-10. I clearly indicated "Nonformal response can rectify the situation." Capt. Salius, Lt. Kavanaugh, C/S martucci firmly met with me the day after the incident and attempted to return my legal paperwork after it was found out I lodged a complaint with the FBI However, a lot of my paperwork was missing, I was told to file a grievance.

On 3-31-10, my cell C1-44 was shaken down after a verbal confrontation between myself and C/O Coachman after which, I was sitting in the TV Room with several other inmates waiting for civilian contractors to complete work. When another inmate informed me C/O Coachman just exited my cell and tossed a brown bag into the garbage can. Upon being locked in my cell I noticed my legal paperwork all over the floor, as I picked it up I noticed that I was missing alot of my legal papers. During this time C/O Coachman, came to my door and started talking shit. When the door opened for recreation I grabbed the garbage bag from the can and brought it into my cell to retrieve my paperwork. then when the door opened for recreation I put the rest of the garbage back in the can and went to lower tier for recreation. At this time C/O Perez and another C/O entered my cell and removed my legal papers from my locker and read through everything for 45 minutes then sieced specific envelopes containing letters to the Dpt. of Justice, Atty Client privileged work product and all my legal papers I was preparing for my up comming habeas trial, my 1983 civil Claim and a privileged letter I had just written to my Atty. If the security video from 3-31-10 and 4-1-10 is reviewed from C1-Unit It will all be seen. For this reason I am requesting the security video be preserved of this incident.

I'm asking all involved be reprimanded.

Inmate signature: _____       Date: 4-20-10

For all remedies except health services, deposit this form in the **Administrative Remedies box**.
For a health services issue, deposit this form in the **Health Services box**.

## SECTION 5                DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

Date Received: 4/27/10       IGP #: 137-10-434       T#:

Disposition: Denied       Date of Disposition: 5/5/10

Reason:

: Denied. In a previous filing which was returned to you without a disposition asked for you to seek an informal resolution and you were remiss in mentioning that you already had done that. You have filed a level 1 grievance concerning staff conduct. There is no evidence that staff have violated A.D. 2.17-Employee Conduct. Staff acted in accordance with policy and procedure. The first shakedown was a routine random shakedown. The second shakedown was in search of correspondence from Quinnipiac University involving Mary Ellen Durso which had entered the facility under the guise of legal mail. The six letters that were taken from you, that had been received from Quinnipiac University/Mary Ellen Durso as legal mail were reviewed for safety and security reasons and were returned to you the next day. Those 6 letters were not legal mail, but social correspondence.

☐ You have exhausted DOC's Administrative Remedies.       ☐ This matter may be appealed to:

Signature: ██████ _____       Date: 5/5/10



# Inmate Grievance Appeal Form - Levels 2/3
## Connecticut Department of Correction

CN 9604
REV 1/31/09

| Inmate name: George LENIART | | | Inmate number: 250010 |
|---|---|---|---|
| Facility/Unit: Walker CI | Housing unit: C1-41 | | Date: 5·6·10 |
| IGP number: 137-10-434 | | T number: | |

Use this form to appeal a Level 1 decision. CN 9602, Inmate Administrative Remedy Form and any attachments must accompany this form; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 response; deposit it in the "Administrative Remedies" box.

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: These searches were performed in a relatory context. The Quinnipiac mail I recieved was not legal mail, nor was it marked as such, in any maner. How DOC chooses to handle mail is not my problem! I use the envelopes to store priviliged work product AFTER THE FACT. I am claiming paperwork from my 1983 civil suit against DOC employees and Habeas paperwork alleging DOC employees misconduct was siezed and not returned during the shake down and clearly visible on video. lets review it together!

| Inmate signature: | | Date: 5·6·10 |
|---|---|---|

### FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

| Date received: 5/17/10 | Disposition: Denied | Date of disposition: 6/11/10 |
|---|---|---|

Reasons:

*You are appealing a level 1-grievance concerning staff conduct. Your claims are unsubstantiated and without merit. I concur with Warden Murphy's response. Your level 2 appeal is denied.*

Level 2 rev ▮▮▮▮▮

| ☐ | This grievance may be appealed within 5 days to Level 3. |
|---|---|
| ☒ | You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered. |

### Appeal of Level 2 Decision to Level 3

I am appealing the Level 2 decision because:

| Inmate signature: | | Date: |
|---|---|---|

### Deposit your appeal in the "Administrative Remedies" box.

### FOR OFFICIAL USE ONLY - LEVEL 3 REVIEW

| Date received: | Disposition: | Date of disposition: |
|---|---|---|

Reasons:

Level 3 reviewer:

# EXHIBIT C



# STATE OF CONNECTICUT
## Department of Correction
### Operations Division
**24 Wolcott Hill Road**
*Wethersfield, CT 06109*

 Dzurenda
*Deputy Commissioner*



| | |
|---|---|
| *To:* | *Wardens* |
| *From:* | Dzurenda, Deputy Commissioner |
| *Date:* | *February 28, 2011* |
| *Subject:* | *VIDEO RETENTION* |

*In an effort to clarify policy with regard to preservation of evidence; specifically the preservation of hand-held video tapes/dvd and stationary footage (video tapes), please be advised of the following:*

1. *Video tapes shall be preserved as evidence if it is video taken or recorded during a documented incident, i.e. inmate fight, planned use of force, medical emergencies, etc. and/or if the video tape is listed as evidence in an incident report package. Video tapes shall be secured and maintained in an area designated by the unit administrator. Only personnel designated by the unit administrator or higher authority shall have access to the video tape storage area. A chain of custody shall be maintained for each video tape in accordance with Administrative Directive 6.9.*

2. *Video tapes shall be preserved if, during routine recording (religious services, visits, etc), or upon later review of such recording, it is determined that an incident occurred and further review is necessary.*

3. *A Video tape shall be preserved if an allegation is made, either verbally or written, that an incident or questionable activity occurred and the video in question is still in facility possession and/or is able to be preserved.*

*In general, any evidence, whether video tapes, audio tapes, documents or any physical evidence, which is referenced in an incident report or investigation should be preserved for a minimum of 4 years, or to the conclusion of any litigation, if any, whichever is longer.*

*Your assistance and cooperation is appreciated. If you have any questions or concerns regarding preservation of video tapes, please contact my office.*

*D/lv*

C: *Commissioner* Arnone
   *Director* Sharr
   *District Administrators*
   *Assistant Attorney General Lynch*
   *Assistant Attorney General O'Neill*
   *Assistant Attorney General Strom*
   *file*



RICHARD BLUMENTHAL
ATTORNEY GENERAL

MacKenzie Hall
110 Sherman Street
Hartford, CT 06105-2294

Office of The Attorney General
State of Connecticut

Tel: (860) 808-5450
Fax: (860) 808-5591

December 10, 2009

George Leniart #250010
MacDougall/Walker Correctional Institution
1151 East Street South
Suffield, CT 06078

Re:   Leniart v. Warden, CV09-4002817

Dear Mr. Leniart:

I have been advised that the Court has requested that videotapes of interactions between you and officers in the A.P. room at Walker on October 20, 2008 and November 17, 2008, be preserved and that I review those videotapes with you. Please be informed that such videotapes are kept only thirty (30) days unless they are related to a specific incident. I have contacted officials at MacDougall/Walker Correctional Institution and they inform me that these tapes were not preserved since there was no request for them within thirty days. I, therefore, will not be meeting with you at Walker since there are no videotapes to show you.

Very truly yours,

Richard T. Biggar
Assistant Attorney General

RTB/bjo

Cc:   Honorable George Levine

# EXHIBIT D

## MacDougall-Walker Correctional Institution
## Office of the Deputy Warden

To:        Inmate Population

From:      Unit Managers

Date:      March 18, 2008

Subject:   Inmate Property Storage

In accordance with Administrative Directive 6.10, Inmate Property, the total amount of property permitted to each individual is not to exceed six (6) cubic feet.

All property must be stored in footlockers and on shelves.

Footwear may be stored on the floor.

Pictures shall be hung in the designated space over the desk area.  Nudity or sexually explicit pictures shall not be displayed anywhere.

All legal materials retained in a housing unit shall be considered inmate property and shall be subject to inspection and review.

Any inmate not in compliance with this directive will see their unit manager, to dispose of excessive property.

C. Boyle,
Deputy Warden

Cc:    Warden Murphy
       Deputy Warden Chapdelaine
       Deputy Warden Maldonado
       File

# EXHIBIT E



August

**State of Connecticut**
**Department of Correction**
**Macdougall-Walker Institution**

### Privileged Telephone Call Logsheet
### Housing Unit___H__

| DATE OF REQUEST | DATE OF CALL | INMATE NAME | INMATE NUMBER | ATTORNEY'S NAME | NUMBER CALLED | TIME ON | TIME OFF | DURATION OF CALL | STAFF SIGNATURE | INMATE SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/01 | | | | | | 12⁵⁹ | 12⁵⁶ | 1/m | 5R | |
| | | | | | | 1⁰³ | 1¹¹ | C | | |
| | | | | | | 1¹⁹ | 1²¹ | 4/m | | |
| | | | | | | 13⁶ pm | | C | | |
| | | | | | | 1³⁴ pm | 15⁷ pm | C | | |
| 8/2 | | | | | | 9²⁰ | 9⁴² | C | | |
| | | | | | | 1²⁰ | 1²² | C | | |
| | | | | | | 1 3⁶ | 13⁷ | 4m | | |
| | | | | | | 13⁶ | 13⁸ | 4/m | | |

— Calls terminated due to "exigent circumstances ... e noted in the Unit Log Book giving a reason for such termination.



### State of Connecticut
### Department of Correction
### Macdougall-Walker Institution

Privileged Telephone Call Logsheet
Housing Unit____H__

| DATE OF REQUEST | DATE OF CALL | INMATE NAME | INMATE NUMBER | ATTORNEY'S NAME | NUMBER CALLED | TIME ON | TIME OFF | DURATION OF CALL | STAFF SIGNATURE | INMATE SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 9:54 AM | 9:55 AM | L/m | | |
| | | | | | | 10:06 AM | 10:09 | C | | |
| | | | | | | 10:09 | 10:12 | C | | |
| | | | | | | 10:16 | 10:18 | C | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

* Calls terminated due to "exigent circumstances" must be noted in the Unit Log Book giving a reason for such termination.

146

| | | |
|---|---|---|
| 7/4/12 | Cont from Page 145 | 7/7/12 |
| | Too Ia housed moves, | from a | 102 |
| ✓ | to H | from H | 10 ff. | 1:37 AM |
| ✓ | Leniart #250010 from H44 to H07, New | | 2:00 AM |
| ✓ | Count total is 928 | c/s Kerr | 2:30 |
| X 7:30 | I/m Transfer, | from H | 2:36 |
| ✓ | to | | 2:58 |
| ✓ | from H to J | | 3:15 |
| ✓ | from H to L | | 3:27 |
| ✓ | from H to L | | 4:00 AM |
| ✓ | from H to L | | 4:07 |
| ✓ | from H to Q | New Count | 4:34 |
| ✓ | Total Is 928 | c/s Kerr | 9:07 |
| 7:01 | Bottom tier recall | c/s Kerr | 5:00 AM |
| 8:00 | Top tier rec | c/s Kerr | 5:14 |
| 8:05 | Outside Rec in progress | c/o Kerr | 5:25 |
| 9:05 | Outside Rec recall | c/o Kerr | 5:46 |
| 9:40 PM | Unit toured, no issues | | 5:55 |
| 9:55 | Facility recall | c/o Kerr | 5:56 |
| 10:00 | Signoff   Count is 85 - total = c/o Kerr | | 5:57 |
| ✓ | Unit toured, no issues | c/s Kerr | 6:00 AM |
| 10:15 | | c/o Kerr | 6:06 |
| 10:35 | Good Signal | c/o Kerr | 6:10 |
| 10:40 | Unit toured, no issues | c/o Kerr | 6:11 |
| 11:00 | Relieved by 2ND Shift | c/o Kerr | 6:13 |

4.

| Time | Entry | |
|---|---|---|
| 4/28/12 | Cont from Page 192 | |
| 4:15 | Mail passed 11 "M" Tower | c/o Kerr |
| | Count return | Count is |
| | 92+0 = 92 | c/o Kerr |
| 5:45 | Top Tier to Rec | c/o Kerr |
| 5:58 | Code m1 | c/o Kerr |
| | Unit secured | c/o Kerr |
| 6:05 | Code cleared | c/o Kerr |
| 6:10 | Top Tier released for Rec | c/o Kerr |
| | Visits in progress | c/o Kerr |
| 7:00 | Logan + Mary called | c/o Kerr |
| 7:15 | Kirk called | c/o Kerr |
| 7:40 | Med line called | c/o Kerr |
| | Protestant bible study | c/o Kerr |
| 7:35 | Top Tier recall | c/o Kerr |
| 8:00 | Bottom Tier to Rec | c/o Kerr |
| 8:10 | Outside Rec in progress | c/o Kerr |
| 8:15 | Inm Trandles cancelled per LT Cross | c/o Kerr |
| X 8:20 | Inm Transfer from to | from H to J |
| | New count total is 91 | c/o Kerr |
| 8:15 | Pst Chos W. Issue | |
| 8:30 | Shower recall | c/o Kerr |
| 9:55 | Facility recall | c/o Kerr |
| | Secured count is 91 total | c/o Kerr |
| 10:15 | | c/o Kerr |
| 10:57 | Good Signal | c/o Kerr |
| 10:50 | Relieved by 3rd shift | c/o Kerr |

| | Disciplinary Report | C/N 9503/1 |
|---|---|---|
| | Connecticut Department of Correction | REV. 01/01/10 |

| Facility/Unit: MacDougall-Walker C.I. | | Report date: 08/02/2012 | |
|---|---|---|---|
| Inmate name: Leniart | | Inmate number: 250010 | |
| Housing unit: H-07 | Location of incident: H 1-Unit | | |
| Report number: MWCI77A72A03 | Incident date: 08/02/2012 | Incident time: 11:18 ☒ am ☐ pm | |
| Offense: DADO | | | Offense class: ☐ A ☒ B ☐ C |

Description of violation:

On the above date and time I Counselor Skribiski was in H-unit to tour. Inmates of H1 Unit, bottom tier had completed their lunch and were being recalled. Inmate Leniart # 250010 of H-07 approached me and inquired about getting his legal call for today. I informed inmate Leniart that I received his request yesterday and he was on the list to get his legal call. Inmate Leniart then demanded that I give him his legal call by today. I informed him that it was recall and no needed to lock-up at this time. Inmate Leniart continued to follow in my area and demand his legal call now. I gave him another direct order to lock-up. Inmate Leniart continued to demand his legal for today and I again gave him another direct order to lock up. At this point in time inmate Leniart eventually looked up but not in a timely manner.
Due to his actions inmate Leniart # 250010 is receiving a DADO ticket.

Witness(es):

Physical evidence:

| Reporting employee (print): Skribiski | | Title: CC |
|---|---|---|
| Reporting employee (signature): | | |
| Date: 08/02/2012 | Time: 12:37 ☐ am ☒ pm | Employee requests copy: ☒ yes ☐ no |

| CUSTODY SUPERVISOR / UNIT MANAGER REVIEW | | | |
|---|---|---|---|
| ☐ Administrative Detention | Date: | Time: | ☐ am ☐ pm |
| ☐ Accused inmate interviewed | ☐ Informal disposition | | |
| Custody Supervisor / Unit Manager name (print): Lawrence | | | |
| Custody Supervisor / Unit Manager signature: | | | |
| Title: C.H.C. | Date: 8-2-12 | Time: 12:37 | ☐ am ☒ pm |

| INMATE NOTICE | | | |
|---|---|---|---|
| Delivered by (print): Wilson | Delivered by (signature): | | |
| Title: CC | Date: 8/2/12 | Time: 1:20 | ☐ am ☒ pm |



## Disciplinary Process Summary Report
### Connecticut Department of Correction

CN 9504/2
REV 9/1/08

**Basis for finding:**

**Basis for sanctions:**

N/A

**DISPOSING OFFICER**

| | |
|---|---|
| Hearing officer signature: | Date: |
| Disciplinary coordinator signature: | Date: 2/10/2012 |
| Investigator signature: | Date: |

**INMATE NOTICE**

You may appeal a finding of guilty by a hearing officer within 15 days.

| | |
|---|---|
| Delivering officer signature: Roy | Date: 8/10/12 |

Copies (5): Investigator, reporting employee, inmate, disciplinary file and inmate master file