UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
GEORGE M. LENIART            :    Civ. No. 3:11CV01635(SALM)
                             :
v.                          :
                             :
PETER MURPHY, et al.        :    March 31, 2016
                             :
-----------------------------x
```

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #163]

The plaintiff, George M. Leniart ("plaintiff"), brings this action against the defendants[1] pursuant to 42 U.S.C. §1983, alleging, inter alia, that the defendants interfered with his attorney-client privileged material, both as a pre-trial detainee and as a convicted prisoner, in violation of the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. [Doc. #80].

Pending before the Court is defendants' Motion for Summary Judgment. [Doc. #163].[2] Plaintiff has filed a Memorandum of Law in Opposition to defendants' motion [Doc. #174], to which

---

[1] The named defendants are: Warden Peter Murphy, John Patz, Captain Salius, Ronald Black, Karen Martucci, Allen M. Coachman, John Flemming, Antonio Villarini, Thomas C. Morrarty, C.J. Yother, C.T.U. Bowen, J. Lawrie, and Sarah Skribiski (hereinafter collectively referred to as the "defendants"). See Doc. #80 at 2-3. The defendants are all employees, or former employees, of the Department of Correction.

[2] With the permission of the Court, on July 27, 2015, defendants filed a supplemental memorandum of law and Rule 56(a)(1) statement, in support of the motion for summary judgment. [Doc. ##164, 165].

defendants have filed a reply [Doc. #176] and supplemental reply [Doc. #177].[3] At the Court's direction, plaintiff filed a sur-reply on December 9, 2015. [Doc. ##179, 180].

For the reasons articulated below, the defendants' Motion for Summary Judgment [**Doc. #163**] is **GRANTED**.

## I.   Background

Plaintiff filed his complaint pro se on October 21, 2011. [Doc. #1].[4] Counsel was appointed pro bono on March 4, 2014. [Doc. #128]. Following several amendments of his initial pleading, plaintiff now proceeds under the operative Second Supplemental Amended Complaint (the "Complaint"), which purports to be verified. [Doc. #80 at 33]. The Complaint alleges five counts, each of which implicates several of the named defendants as identified supra. The crux of plaintiff's Complaint is that his rights secured by the First, Fifth, Sixth, and Fourteenth Amendments were violated by the various defendants when his

---

[3] Plaintiff filed an objection to the "second, third and fourth paragraphs [of the supplemental reply] to the extent those paragraphs offer further arguments for the granting of summary judgment." [Doc. #178 at 1]. The Court **OVERRULES** this objection and will consider the contested paragraphs in the supplemental reply as the arguments set forth therein relate to defendants' arguments in reply that "[p]laintiff's affidavit is lacking in both personal knowledge and foundation." [Doc. #176 at 2].

[4] District Judge Stefan Underhill's Initial Review Order disposed of all claims against defendant "Lieutenant Kavanaugh." [Doc. #6]. Plaintiff later withdrew his claims against the "John Doe" defendants. See Doc. ##73, 79. Judge Underhill also dismissed all claims for denial of access to the courts pursuant to 28 U.S.C. §§1915A and 1915(e)(2)(B)(i). [Doc. #6].

handwritten "legal notes," in which he contends he had an expectation of "legal privacy," were read and/or confiscated. [Doc. #80 at 24-25]. Plaintiff also alleges that certain defendants failed to investigate and/or act upon his "constitutional complaints[.]" Id. at 25-27.

## II.  Local Rule 56(a) Statements

Before turning to a recitation of the undisputed material facts, the Court will address the argument raised in defendants' reply brief that the Court should deem certain facts admitted. Defendants assert that plaintiff has "chosen not to offer any evidence to controvert many facts, and instead alleges 'neither admit or deny – not material,'" as to the following paragraphs of defendants' Local Rule 56(a) Statement: 34, 35, 37, 38, 39, 78, 80, 81, 83-88, 94-96, 103, 105-09, 111-14, 117-26, 133-35, 137-39, 141-43, 149-61, 164-78, 189, 192-95, 197, 199, 220-22, 225, and 227-32. [Doc. #176 at 4]. Plaintiff has not responded to this argument.

District of Connecticut Local Civil Rule ("D. Conn. L. Civ. R.") 56(a)1 requires that every summary judgment motion be accompanied by a "Local Rule 56(a)1 Statement," setting forth in separately numbered paragraphs "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)1. A party

opposing summary judgment must include with its opposition a

"Local Rule 56(a)2 Statement,"

> which states in separately numbered paragraphs meeting
> the requirements of Local Rule 56(a)3 and
> corresponding to the paragraphs contained in the
> moving party's Local Rule 56(a)1 Statement whether
> each of the facts asserted by the moving party is
> admitted or denied.

D. Conn. L. Civ. R. 56(a)2. Local Rule 56(a)3 further mandates

that

> each denial in an opponent's Local Rule 56(a)2
> Statement, must be followed by a specific citation to
> (1) the affidavit of a witness competent to testify as
> to the facts at trial and/or (2) evidence that would
> be admissible at trial[.] ... [F]ailure to provide
> specific citations to evidence in the record as
> required by this Local Rule may result in the Court
> deeming certain facts that are supported by the
> evidence admitted[.]

D. Conn. L. Civ. R. 56(a)3 (alterations added).

Courts in this District have not hesitated to deem admitted

facts that are not appropriately denied at summary judgment. See

Carone v. Mascolo, 573 F. Supp. 2d 575, 581 (D. Conn. 2008)

("When a party fails to appropriately deny material facts set

forth in the movant's Rule 56(a)(1) statement, those facts are

deemed admitted." (quoting Knight v. Hartford Police Dep't, No.

3:04CV969(PCD), 2006 WL 1438649, at *4 (D. Conn. May 22,

2006))); see also Giglio v. Derman, 560 F. Supp. 2d 163, 166 (D.

Conn. 2008) (failure of Local Rule 56(a)2 statement to cite to

evidence in the record "allow[ed] the Court to deem such

paragraphs admitted"); <u>Wanamaker v. Town of Westport Bd. of
Educ.</u>, No. 3:11CV1791(MPS)(WIG), 2013 WL 3816592, at *3 n.3 (D.
Conn. July 22, 2013) ("[C]ertain decisions from this District
have held that it is an improper response for a non-moving party
to respond that he or she lacks personal knowledge and can
neither admit nor deny the statement." (citing cases)).
Accordingly,

> [w]here the Plaintiff has objected to Defendant's
> facts but has failed to support her objection with any
> admissible evidence in the record, where the record
> itself does not support Plaintiff's denials, or where
> the Plaintiff has neither admitted nor denied a fact
> and where the record supports such fact, those facts
> are deemed to be admitted. Where a statement is not
> supported by the record, the Court either notes such
> or does not rely on the purported fact in its
> determination.

<u>Johnson v. Conn. Dep't of Admin. Servs.</u>, 972 F. Supp. 2d 223,
229 (D. Conn. 2013) (collecting cases), <u>aff'd</u>, 588 F. App'x 71
(2d Cir. 2015).

Here, plaintiff's response to 91 out of 232 paragraphs in
the defendants' Local Rule 56(a) statement is: "NEITHER ADMIT OR
DENY – NOT MATERIAL." [Doc. #174-1, ¶¶34, 35, 37, 38, 39, 78,
80, 81, 83-88, 94-96, 103, 105-09, 111-14, 117-26, 133-35, 137-
39, 141-43, 149-61, 164-78, 189, 192-95, 197, 199, 220-22, 225,
and 227-32]. Because plaintiff fails to support any response to
these paragraphs with a citation to the record in compliance
with D. Conn. L. Civ. R. 56(a)3, the Court will deem admitted

any fact that is in fact material, which is neither admitted nor denied, and supported by the record.

### III. **Legal Standard**

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (alterations added).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."[5] Marvel Characters, 310 F.3d at 286. The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325; see also Goenaga v. Mar. of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will

---

[5] A fact is "material" if it might affect the outcome of the suit under the substantive law applicable to the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

In deciding a motion for summary judgment, "[t]he court must resolve all ambiguities and draw all inferences in favor of the nonmoving party[.]" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (internal quotation marks omitted) (quoting Marvel, 310 F.3d at 286). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases in original).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation marks omitted) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1997)). Where, as here, "a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall

be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Id. at 310 (quoting Fed. R. Civ. P. 56(e)). Therefore,

> [i]n order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that "set[s] forth specific facts" showing a genuinely disputed factual issue that is material under the applicable legal principles. Fed. R. Civ. P. 56(e); see, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004)[.] A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, see, e.g., Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996), or based on speculation, see, e.g., id. ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.")[.]

Major League Baseball, 542 F.3d at 310 (alterations added).

## IV.  **Facts**

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion for summary judgment. The following factual summary is based on plaintiff's Complaint [Doc. #80], defendants' Local Rule 56(a)1 Statement of Material Facts [Doc. #163-2] and Supplemental Local Rule 56(a)1 Statement [Doc. #165-4] (collectively "Def. 56(a)1 Statement"), plaintiff's Local

Rule 56(a)2 Statement of Material Facts [Doc. #174-1] ("Pl. 56(a)2 Statement"), and accompanying affidavits, depositions and exhibits, to the extent that they are admissible evidence. The following factual summary, therefore, does not represent factual findings of the Court. All facts stated below are undisputed (or have been deemed undisputed) unless stated otherwise.

On June 22, 2010, plaintiff was sentenced in Connecticut Superior Court, Judicial District of New London, to a term of imprisonment of life without parole for three counts of capital felony murder and one count of murder. [Def. 56(a)1 Statement, ¶2, Pl. 56(a)2 Statement, ¶2 (admitted)]. Plaintiff is currently incarcerated at Cheshire Correctional Institution, where he has been held since August 9, 2012. Id. at ¶¶1, 6. Prior to plaintiff's transfer to Cheshire, he was held in the MacDougall Walker Correctional Institution ("MWCI"), which is a high/maximum level facility for adult males. Id. at ¶¶4, 185. MWCI is comprised of two facilities, the Walker building and the MacDougall building. Id. at ¶186. From April 1, 2008, until August 11, 2010, plaintiff was housed in the Walker Building of MWCI, and then from August 12, 2010, until August 9, 2012, in the MacDougall building of that same facility. Id. at ¶¶4, 5.

A.   **2008 Events**

Defendant Antonio Villarini ("Villarini") was working as an Admitting and Processing ("A&P") Officer in the Walker building

of MWCI on October 20, 2008, and November 17, 2008. [Def. 56(a)1 Statement, ¶8, Pl. 56(a)2 Statement, ¶8 (admitted)]. As an A&P Officer, Villarini was responsible for processing inmates in and out of holding cells for transportation to court. Id. at ¶11. When Villarini processed a prisoner in the A&P area, the inmate would be moved from one holding cell to another; if an inmate had legal documents with him, he was not permitted to keep these documents with him while in the holding cell. Id. at ¶¶13-14, 75. Rather, an inmate's legal papers were placed on a stainless steel table outside of the holding cell, where manila envelopes containing legal papers were searched within the view of inmates, and inspected to ensure they did not contain any drugs, weapons, paper clips, or other contraband. Id. at ¶¶15-16, 75. Although an individual inmate could lose sight of his legal materials during a strip search, the materials otherwise stayed within the view of all inmates confined in the holding cells. Id. at ¶16.

The following events are denied by defendants. Plaintiff alleges that on October 20, 2008, he was brought to the A&P room for transport to a scheduled court appearance. [Doc. #80 at ¶12]. Upon arrival to the A&P room, Villarini ordered plaintiff to place his legal folder, which plaintiff contends was marked "legal/confidential", on a steel table, to which plaintiff initially objected, but then obeyed upon receiving a direct

order from another officer. Id. at ¶13. Plaintiff alleges that following a strip search, he was moved to a holding cell to await transport, where he observed Villarini spending over thirty minutes reading through his legal documents, making comments about their contents, and removing newspaper clippings and handwritten documents. Id. at ¶¶14-15, 19. Plaintiff alleges that he was able to see these events "through a reflection in the glass of a opposite holding cell window." Id. at ¶20 (sic). When plaintiff received his materials, he noticed "numerous documents were missing" and as a result, was "unable to proceed with critical lines of discussion" with his criminal defense attorney, with whom he was meeting on that day. Id. at ¶¶26-27.

Plaintiff also alleges that a similar violation occurred on November 17, 2008. Unless otherwise stated, defendants deny the following events as alleged by plaintiff. Plaintiff alleges that on November 17, 2008, he was "brought on another 3am[] court trip which mirrored the last on 10-20-08." [Doc. #80 at ¶31]. Plaintiff alleges that while awaiting transport, he watched defendant Villarini and other officers search through his manila envelope, which contained, among other items, a 26 page hand-written timeline containing "crucial information of facts explaining in detail a twelve year occurrence of events critical to [his] capitol felony arrest, and a six page outline of a posed defense strategy[.]" Id. at ¶¶32-33. Plaintiff alleges

11

that the correctional officers, including Villarini, read these materials and that Villarini then took the documents to a corner office, after which plaintiff was able to see "flashes from the photocopier." [Doc. #80 at ¶¶34-35]. While this was happening, plaintiff began yelling, kicking and rattling the cell door. Id. at ¶¶35-36. Plaintiff's actions prompted defendant Ronald Black to enter the A&P room and give plaintiff a direct order to stop kicking the door. [Def. 56(a)1 Statement, ¶¶205-206, Pl. 56(a)2 Statement, ¶¶205-206 (admitted)]; [Doc. #80 at ¶37].[6] Following Black's direct order to plaintiff, plaintiff told Black that Villarini was reading and making copies of his legal materials. [Def. 56(a)1 Statement, ¶207, Pl. 56(a)2 Statement, ¶207 (admitted)]. Black followed up on this complaint with Villarini, who denied reading or making copies of plaintiff's legal work. Id. at ¶¶207-208; Doc. #80 at ¶¶38-39.

Plaintiff alleges that following this interaction with defendant Black he was then transported to state court. [Doc. #80 at ¶44]. The Department of Correction ("DOC") transports inmates using its Correctional Transportation Unit ("CTU").

---

[6] At the time of the events in question, defendant Black worked as a correctional lieutenant in MWCI, with his duties including supervising staff and managing the housing units, the A&P area, inmate work detail, and the overall operations of the facility. [Def. 56(a)1 Statement, ¶204, Pl. 56(a)2 Statement, ¶204 (admitted)]. Defendant Black has worked for the Department of Correction since 2000, previously as a correctional officer, and has been assigned to MWCI for his entire tenure. Id. at ¶¶203-204.

[Def. 56(a)1 Statement, ¶40, Pl. 56(a)2 Statement, ¶40 (admitted)]. When transporting an inmate from MWCI to New London Superior Court, DOC procedure was to transport the inmate first to the "hub" at Corrigan-Radgowski CC ("Corrigan") in Uncasville, Connecticut, where the inmate would then await his next ride with the judicial marshals to the New London Superior Court. Id. at ¶¶41-42. Upon return from New London Superior Court, the judicial marshals would transport plaintiff to Corrigan, where plaintiff and his property were admitted and processed while awaiting CTU transport from Corrigan to MWCI. Id. at ¶43. Because plaintiff was housed in the Walker building of MWCI, CTU would drop plaintiff off directly at that building. Id. at ¶44. Plaintiff alleges that when he arrived at Corrigan during the course of his transport on November 17, 2008, he noticed documents missing from his legal materials, including his handwritten documents. [Doc. #80 at ¶45]. Defendants deny this allegation.

Defendant John Bowen has worked with the DOC since 2001 as a correctional officer. [Def. 56(a)1 Statement, ¶46, Pl. 56(a)2 Statement, ¶46 (admitted)]. In 2008, Bowen worked as a correctional officer assigned to the CTU, and would typically transport inmates in state vehicles to and from correctional facilities and the inmates' court appearances. Id. at ¶¶47-48. At his deposition, Bowen explained that he first drops inmates

off at the Walker building at MWCI, and then proceeds to the
MacDougall building, where he finishes his transport route and
refuels the transport van. Id. at ¶53. Bowen stated it would be
"silly" to first go to the MacDougall building, and then to
Walker, only to double back to MacDougall to refuel the van. Id.
at ¶54.

Defendants deny the following allegations. Plaintiff
alleges that on November 17, 2008, upon his return to MWCI, he
was the last inmate to be dropped off and was alone with
defendant Bowen, when Bowen stopped the vehicle between the two
buildings comprising MWCI, and stated to plaintiff that "we are
all around you, that was a nice little story you wrote for your
lawyer[.]" [Doc. #80 at ¶¶48-49]. Plaintiff further alleges that
Bowen told plaintiff he had given a copy of plaintiff's
handwritten documents "to a family member that was a detective
at Troop E who was investigating plaintiff's case and if there
was any more 'tapes', that he wanted to trade for his paperwork,
'because we are going to do what we have to do to keep you in
here.'" Id. at ¶¶49-50.

Attached to the Affidavit of defendant Bowen is a
Correctional Transportation Unit Daily Route Schedule &
Equipment Inventory for November 17, 2008. [Doc. #163-7, Bowen
Aff., Ex. A]. On this date, Bowen left Corrigan at 8:04PM, with
three inmates, one of whom was plaintiff. Id.; [Def. 56(a)1

14

Statement, ¶57, Pl. 56(a)2 Statement, ¶57 (admitted)]. Bowen
then drove to the Hartford jail, arriving at 8:47PM. [Doc. #175,
Bowen Depo., 32:24-33:4; Doc. #163-7, Bowen Aff., Ex. A]. Bowen
dropped off one inmate, picked up two, and departed the Hartford
jail with four inmates. [Doc. #175, Bowen Depo., 33:5-11; Doc.
#163-7, Bowen Aff., Ex. A]. Bowen then departed for MWCI, and
dropped off one inmate, plaintiff, at the Walker building at
9:28PM. [Doc. #175, Bowen Depo., 33:13-17, 33:24-34:5; Doc.
#163-7, Bowen Aff., Ex. A; Doc. #163, Bowen Aff., at ¶14]. Bowen
next departed the Walker building at 9:36PM, and proceeded to
the MacDougall building where he dropped off the remaining three
inmates at 9:38PM. [Doc. #175, Bowen Depo., 33:21-23; Doc. #163-
7, Bowen Aff., Ex. A; Doc. #163, Bowen Aff., at ¶15]. Bowen
departed MacDougall at 9:47PM, arriving at "base" at 10:00PM
that evening. [Doc. #163-7, Bowen Aff., Ex. A; Doc. #163, Bowen
Aff., at ¶16].[7]

---

[7] The Court adopts defendant Bowen's version of the November 17,
2008, transport, for purposes of this motion. "When opposing
parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could
believe it, a court should not adopt that version of the facts
for purposes of a ruling on a motion for summary judgment."
Scott v. Harris, 550 U.S. 372, 380 (2007). The plaintiff's
version of events is blatantly contradicted by the documentary
evidence. Specifically, the record includes contemporaneous
documentation of the route and timeline of Bowen's travels on
November 17, 2008, as well as a logical explanation for that
route in Bowen's testimony. [Doc. #163-7 at 7; Def. 56(a)1
Statement, ¶¶53-54, Pl. 56(a)2 Statement, ¶¶53-54 (admitted)].
Plaintiff has made no claim that the records are inaccurate or

### B.    2012 Events

Defendant Sara[8] Skribiski ("Skribiski") has worked at the
DOC in various roles since 2003. [Def. 56(a)1 Statement, ¶162,
Pl. 56(a)2 Statement, ¶162 (admitted)]. Skribiski is currently
employed by the DOC as a correctional counselor. Id. Skribiski's
duties in this role include, among others: assisting inmates in
making legal telephone calls; distributing legal mail; unit
classification; and assuring that inmates' requests are answered
in accordance with DOC policy and procedure. Id. at ¶163.

In 2012, Skribiski was assigned to the H-1 housing unit at
MWCI, and plaintiff was assigned to her caseload. Id. Plaintiff
alleges that Skribiski read his outgoing privileged legal mail.
[Doc. #80, at ¶105; Doc. #174-4, Leniart Aff., at ¶¶31-32].
Although not alleged in his Complaint, plaintiff also avers that

---

falsified; he has not responded to the records at all. Where a
plaintiff relies in opposition to summary judgment "almost
entirely on [his] own testimony, in the form of an affidavit and
excerpts from [his] depositions[,]" and the moving party
produces "competent and persuasive evidence, including
contemporaneous" documentation, summary judgment is not defeated
by the plaintiff's unsupported claims. Rojas v. Roman Catholic
Diocese of Rochester, 660 F.3d 98, 105 (2d Cir. 2011); see also
Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)
("Incontrovertible evidence ... whose accuracy is unchallenged,
should be credited by the court on" a motion for summary
judgment).

[8] Plaintiff spells this defendant's first name "Sarah" in the
Complaint. However, all of the documentation provided by
defendants, including defendant Skribiski's deposition, spells
her name "Sara." The Court assumes this is the correct spelling.

Skribiski read his incoming privileged legal mail. [Doc. #174-4, Leniart Aff., at ¶30]. Defendants deny these allegations.

## V.    Discussion

### A.    Unopposed Claims

Because plaintiff's memorandum in opposition to the motion for summary judgment limited its arguments to Sixth Amendment claims against defendants Villarini, Bowen, Black and Skribiski, and a First Amendment claim against Skirbiski, the Court ordered that plaintiff file a sur-reply clarifying whether he intended to pursue only those claims. [Doc. #179]. In compliance with this order, plaintiff filed a sur-reply stating, inter alia:

> The Plaintiff argues that there remain genuine issues of material fact regarding the allegations of the Second Supplemental Complaint that give rise to the Plaintiff's claims of violations of his rights under the First and Sixth Amendments against defendants Villarini, Bowen, Black and Skribiski.
>
> As to the remaining defendants and claims, the plaintiff does not oppose the Defendants' Motion for Summary Judgment to the extent of the allegations of constitutional violations presented in the Second Supplemental Complaint.

[Doc. #180 at 1-2].

Therefore, based on plaintiff's representations, and absent objection, the Court **GRANTS** summary judgment in favor of the following defendants on the following claims:

**Antonio Villarini** with respect to the claims based on the Fifth and Fourteenth Amendments alleged in Counts 1 and 2 of the Complaint;

**John Patz** as to all claims alleged in Counts 1 and 2 of the Complaint;

**John Bowen** with respect to the claims based on the Fifth and Fourteenth Amendments alleged in Count 2 of the Complaint;

**David Yother** as to all claims alleged in Count 3 of the Complaint;

**Thomas Morrarty** as to all claims alleged in Count 3 of the Complaint;

**Karen Martucci** as to all claims alleged in Count 4 of the Complaint;

**John Flemming** as to all claims alleged in Count 4 of the Complaint;

**Scott Salius** as to all claims alleged in Count 4 of the Complaint;

**Jay Lawrie** as to all claims alleged in Count 5 of the Complaint;

**Sara Skribiski** with respect to the claims based on the Fifth and Fourteenth Amendments alleged in Count 5 of the Complaint;

**Peter Murphy** as to all claims alleged in Counts 1, 2 and 4 of the Complaint;

18

**Ronald Black** as to the claims based on the Fifth and Fourteenth Amendments alleged in Count 2 of the Complaint; and

**Allen Coachman** as to all claims alleged in Count 4 of the Complaint.

Accordingly, the following claims remain ripe for adjudication: **Count 1** alleging Sixth Amendment claims against defendant Villarini; **Count 2** alleging Sixth Amendment claims against defendants Villarini, Black and Bowen; and **Count 5** alleging First and Sixth Amendment claims against defendant Skribiski. The Court will address each remaining claim in turn.

**B.   Sixth Amendment Claims –- Villarini, Black & Bowen**

Plaintiff alleges in Counts One and Two that his Sixth Amendment right to counsel was violated by defendants Villarini, Black and Bowen when they read, copied and/or shared materials he had prepared that he deems "legal" materials. Defendants argue that plaintiff has failed to state a claim for a Sixth Amendment violation, and further, that plaintiff has no right to privacy in his legal papers.

"The right of the accused '[i]n all criminal prosecutions ... to have the Assistance of Counsel for his defence' is a direct right, grounded squarely in the text of the Constitution." Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001) (quoting U.S. Const. amend. VI). "[I]n the context of the right to counsel, unreasonable interference with the accused

person's ability to consult counsel is itself an impairment of the right." Id. Thus, "[i]n considering burdens on the Sixth Amendment right to counsel," the Second Circuit has not "required that an incarcerated plaintiff demonstrate 'actual injury' in order to have standing." Id. at 186 (collecting cases). Plaintiff contends that the actions of the defendants unlawfully obstructed his right to the assistance of counsel.

Defendants contend that plaintiff's section 1983 claims implicating the Sixth Amendment are barred by Heck v. Humphrey, 512 U.S. 477 (1994), as plaintiff's claims, if proven, would necessarily undermine the validity of his criminal conviction. In Heck, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (footnote omitted).

Before reaching the Heck analysis, however, the Court first inquires as to whether there is sufficient evidence in the record to support a claim that the defendants' actions in fact obstructed plaintiff's right to counsel. While no showing of prejudice may be required, a showing that there was some actual infringement of the right to counsel is essential. See Goenaga, 51 F.3d at 18 (summary judgment may be granted where the movant defendant "can point to an absence of evidence to support an essential element of" plaintiff's claim).

Plaintiff's opposition to the motion for summary judgment asserts that an invasion of the attorney-client privilege equates, per se, to a violation of plaintiff's Sixth Amendment right to counsel. [Doc. #174 at 8-9]. He cites no authority in support of this proposition, and the Court has found none. It is true that "government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights." Clutchette v. Rushen, 770 F.2d 1469, 1471 (9th Cir. 1985). But the plaintiff must show more than the mere breach of the privilege to raise a viable constitutional claim. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." Id. (citing Maness v. Meyers, 419 U.S. 449, 466 n.15 (1975); Beckler v. Superior Court, 568 F.2d 661, 662 (9th Cir. 1978)). Here, there is no indication in the Complaint or in any

of the materials submitted by the parties of how the alleged reading of plaintiff's legal materials actually obstructed his access to counsel and thus interfered with his Sixth Amendment rights.

The only allegation which approaches an assertion of interference with Sixth Amendment rights draws a connection that is tenuous, at best. Plaintiff claims that the theft of some of his handwritten materials made it difficult for him to remember items he wished to discuss with his attorney. [Doc. #174-3, Leniart Depo., 51:22-52:11; Doc. #80 at ¶27]. Although the Complaint describes the missing documents as "irreplaceable," [Doc. #80 at ¶140], plaintiff testified that the documents were in fact his own notes based on his own thoughts, ideas and recollections, and a few newspaper clippings. [Doc. #174-3, Leniart Depo., 32:8-21, 43:18-44:1]. There is no explanation of why these materials could not be recreated if necessary. The Court has been unable to identify any case in which the seizure or inspection of a criminal defendant's own notes, intended to assist his discussions with counsel but not for delivery to counsel, was found to constitute a violation of the right to counsel.

This case raises none of the usual bases for a finding of interference with a pretrial detainee's right to counsel. There is no allegation that plaintiff was refused meetings with his

counsel or counsel's representative. Cf. Smith v. Coughlin, 748 F.2d 783, 789 (2d Cir. 1984) (finding that a prison ban on all visits by paralegals denied pre-trial detainee the effective assistance of counsel). There is no allegation that plaintiff's mail to his attorney was censored, or not sent out at all. Cf. Washington v. James, 782 F.2d 1134 (2d Cir. 1986) (finding plaintiff stated a claim for Sixth Amendment violation where a letter from him to his counsel was intercepted and retained by prison officials). There is no allegation against these defendants of deprivation of a reasonable opportunity for legal calls. Cf. Tucker v. Randall, 948 F.2d 388, 390-91 (7th Cir. 1991) (noting that "Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer" for days at a time). In fact, plaintiff testified that his attorney never visited him at the facility [Doc. #174-3, Leniart Depo., 15:25-16:17], spoke to him on the phone only once or twice, id. at 18:6-19, and never responded to his letters, id. at 52:22-24, but that the lack of communication was due to his attorney being "very busy," rather than to any conduct by the defendants or the facility. Id. at 19:3-12.

The Court therefore finds that plaintiff's allegations do not suffice to state a claim for violation of his Sixth Amendment right to confer with counsel.

Even if the plaintiff had stated a viable claim, however, this action would be barred by Heck. The primary focus of plaintiff's Complaint is the alleged use of his handwritten materials to prejudice him in the criminal proceedings and trial against him. Plaintiff alleges that the defendant Correction Officers conspired with the State Police and others to falsely accuse and convict him of the crime for which he is currently serving a sentence. [Doc. #80 at ¶¶139(C), 141(C)]. Plaintiff further contends that "there was a broad sweeping informal policy and daily procedure at Walker CI ... by correctional intelligence in collusion with law enforcement efforts to gain strategy information to prosecute weak cases." [Doc. #80 at ¶30]. Plaintiff testified that he believed the DOC and the State Police to "have a working relationship, and they share information." [Doc. #174-3, Leniart Depo., 57:21-25].

In sum, plaintiff alleges that the defendants read, copied and shared his handwritten notes regarding legal strategy and other legal materials as part of a conspiracy with the investigating officers to influence his state criminal case. Plaintiff testified: "They were setting me up, basically." Id. at 60:10.[9] If plaintiff were to succeed in proving these claims

---

[9] When asked to provide the names of the correctional officers that were involved in "setting him up," plaintiff stated: "The correctional -- all of them." [Doc. #174-3, Leniart Depo., 80:9-11].

in this civil case, he would be proving at the same time that his state prosecution and conviction were infected by police misconduct and collusion. Such a result "would necessarily imply the invalidity of his conviction or sentence," Heck, 512 U.S. at 487, and thus these claims are barred by Heck.

Plaintiff's counsel is correct that nominal damages can be available for violation of the Sixth Amendment right to counsel where no prejudice is shown. See Doc. #174 at 8. A nominal violation is not the allegation here, however. Here, there are allegations of significant prejudice. Here, plaintiff clearly and strongly asserts that the actions of Villarini, Black and Bowen were part of a concerted effort, in collusion with a State Police officer and others, to deny plaintiff a fair trial in state court and in fact to "set [him] up" for a murder conviction. Given that plaintiff was convicted and sentenced to a term of life imprisonment without parole, his allegations necessarily suggest that the conviction was illegally obtained.

Were the Court to find that defendants read, shared and/or confiscated plaintiff's legal materials as part of a conspiracy to frame him for a crime he did not commit, that finding would necessarily undermine plaintiff's state court criminal conviction. See, e.g., Zarro v. Spitzer, 274 F. App'x 31, 34-35 (2d Cir. 2008) ("[A] ruling in Plaintiff's favor as to Counts 2 and 7 [accusing defendants of interfering with plaintiff's

ability to pay attorney's fees in his criminal case], which raise questions about Plaintiff's Sixth Amendment right to counsel, and Counts 4 and 8, which accuse the defendants of tampering with evidence and intimidating a witness, would also implicate the validity of his conviction." (alterations added)). This is precisely the scenario prohibited by Heck.

Plaintiff relies on two cases to support his arguments in opposition to defendants' motion as it concerns these three defendants. Plaintiff cites to Prater v. City of Philadelphia, Civ. No. 11CV1618, 2015 WL 3456659, at *5 (E.D. Pa. June 1, 2015), an unpublished District Court decision, for the proposition that "nominal damages are available even where no actual injury occurs, e.g., where interference with the right to assistance of counsel does not result in a wrongful conviction." [Doc. #174 at 8]. Prater is inapposite. As noted, plaintiff here contends that the alleged interference with his right to counsel did result in a wrongful conviction. Further, the allegations in Prater were of actual denials of contact with counsel by way of restricting which attorneys could be placed on call lists and throwing away legal mail rather than delivering it. See Prater, 2015 WL 3456659, at *4.

Plaintiff's reliance on the Ninth Circuit case of Nordstrom v. Ryan, 762 F.3d 903 (9th Cir. 2014), also misses the mark. The plaintiff in Nordstrom did not seek money damages, but rather to

"enjoin[] the continuation of an unconstitutional practice[;]" namely the correctional facility's practice of reading inmate outgoing legal mail. Nordstrom, 762 F.3d at 907, 911. Indeed, the Ninth Circuit explicitly recognized that plaintiff was not challenging "a conviction following an improper intrusion into the attorney-client relationship[.]" Id. at 911. Conversely, plaintiff here does not challenge any alleged practice as a matter of principle, but rather claims that improper intrusion into the attorney-client privilege caused him prejudice including the "fabrication and prosecution of a weak criminal case" against him, [Doc. #80 at ¶139(C)], for which he should be awarded money damages. Accordingly, plaintiff's reliance on Nordstrom is misplaced.

Given that plaintiff's claims necessarily imply the invalidity of his state conviction, in order to pursue this case, under Heck, he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487. Defendants represent, and plaintiff does not dispute, that plaintiff in fact withdrew his habeas petition against his criminal defense attorney on the eve of his habeas trial. See

Doc. #163-1 at 17.[10] The record provides no evidence that plaintiff's conviction has been invalidated in any way. Accordingly, the Court finds that Heck bars plaintiff from litigating Counts 1 and 2 of the Complaint, and therefore **GRANTS** defendants' motion for summary judgment on Counts 1 and 2 of the Complaint as to defendants Villarini, Black and Bowen.

### C.   Sixth Amendment Claims -- Skribiski

Plaintiff's Complaint, which he filed pro se before the appointment of pro bono counsel, specifically alleges a Fifth Amendment violation (among others) against defendant Skribiski. [Doc. #80 at 31]. It does not allege a Sixth Amendment violation. However, in his motion for summary judgment, prepared by counsel, plaintiff alleges that Skribiski violated his First and Sixth Amendment rights, apparently abandoning any Fifth Amendment claim. Notably, counsel does not specifically articulate a basis for plaintiff's Sixth Amendment claim against Skribiski, but rather refers the Court to the arguments made with respect to defendants Villarini, Black and Bowen: "The same Sixth Amendment right to counsel protects the Plaintiff's legal correspondence, discussed above[.]" [Doc. #174 at 10]. However, neither the timing of the allegations against Skribiski, nor a

---

[10] The Court's review of the online records of the Superior Court confirms this.

liberal reading of plaintiff's Complaint, support an allegation of a Sixth Amendment violation.

"The Sixth Amendment right to counsel applies only to 'critical stages' of a criminal prosecution." Meadows v. Kuhlmann, 812 F.2d 72, 76 (2d Cir. 1987). "Unlike criminal defendants, prisoners and indigents filing civil actions have no constitutional right to counsel." Mackey v. DiCaprio, 312 F. Supp. 2d 580, 581 (S.D.N.Y. 2004) (quoting Barzey v. Daley, No. 99CV11917(BSJ)(KNF), 2000 WL 959713, at *1 (S.D.N.Y. July 11, 2000)). There is, in other words, no Sixth Amendment right to counsel in connection with civil proceedings. See, e.g., United States v. Coven, 662 F.2d 162, 176 (2d Cir. 1981).

Plaintiff alleges that Skribiski read his privileged legal mail in June 2012, well after his conviction in state court. [Doc. #80 at ¶¶104-106]. The events forming the basis of plaintiff's Sixth Amendment claims against Villarini, Bowen and Black, all occurred prior to plaintiff's state court conviction and plaintiff claims that those defendants read, copied and disseminated his legal materials as part of a conspiracy with the investigating officers in an effort to influence his state criminal case. The plain allegations of plaintiff's Complaint as to Skribiski, however, do not implicate criminal proceedings against him. Rather, they specifically refer to plaintiff's civil lawsuits:

104. During mid month of June 2012, plaintiff sent out
by U.S. mail over 300 interrogatories and request
for admissions to the correctional defendants,
many of whom worked at M.W.C.I. facility where
plaintiff was housed.

105. The procedure in the H1-unit for inmate's to send
out over-weight legal correspondence is to hand
it to the counselor un-sealed so that it could be
inspected before it is sent out, at that time
that the interrogatories were sent out an
argument ensued regarding counselor Skribiski,
reading the privileged documents[.]

106. ... [Skribiski] threatened plaintiff that "she
could fuck everything up regarding plaintiff's
civil action against other staff members[.]"

...

147. The defendant's were recklessly indifferent to
the plaintiff's rights secured and protected by
the First Amendment to the United States
Constitution, in one or more of the following
ways:

(A)  In that, defendant Skribiski ... interfered
with a federal civil action[.]

[Doc. #80 at ¶¶104-106, 147 (sic) (alterations added)].

Plaintiff fails to allege any facts implicating his Sixth

Amendment right to counsel in a criminal matter with respect to

defendant Skribiski. Accordingly, the Court finds that plaintiff

"has failed to make a sufficient showing on an essential element

of [his] case with respect to which [he] has the burden of

proof." Celotex, 477 U.S. at 323 (alterations added). Therefore,

the Court **GRANTS** defendants' motion for summary judgment as to

any Sixth Amendment violation alleged against defendant Skribiski.

### C.  First Amendment Claim

Plaintiff alleges that defendant Skribiski violated his First Amendment rights by interfering with and reading his legal mail. Defendants contend that there is no First Amendment violation.[11]

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (collecting cases). "To establish a violation of this right, the prisoner must show that the interference with his mail was both regular and unjustified." Smith v. City of New York, No. 14CV443(LTS)(KNF), 2015 WL 1433321, at *4 (S.D.N.Y. Mar. 30, 2015); see also Davis, 320 F.3d at 351 ("[A]n isolated incident of mail tampering is

---

[11] "The Second Circuit has explained that tampering with a prisoner's mail may constitute an actionable violation of § 1983 '(1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received.'" Antrobus v. City of New York, No. 11CV2524(RA), 2014 WL 1285648, at *2 (S.D.N.Y. Mar. 27, 2014) (quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)). Because Judge Underhill previously dismissed all claims for denial of access to the courts, see Doc. #6, the Court interprets plaintiff's First Amendment claim as limited to the first possibility. In that regard, the Court notes that plaintiff alleges only that his mail was read, not that it was censored.

usually insufficient to establish a constitutional violation.
Rather, the inmate must show that prison officials regularly and
unjustifiably interfered with the incoming legal mail."
(internal citation and quotation marks omitted)). Because "[t]he
First Amendment protects prisoners' access to mail directly, ...
it is unnecessary to allege 'actual injury' when asserting a
violation of prisoners' right to the free flow of mail." Smith,
2015 WL 1433321, at *5 (internal citations and quotation marks
omitted).

Reading the allegations of the fifth count of plaintiff's
verified Complaint, one is hard pressed to find allegations
supporting a First Amendment claim on the basis of free flow of
mail. Instead, amidst a backdrop of sordid allegations relating
to unwanted sexual advances and retaliation, there is but one
factual allegation that defendant Skribiski read, or otherwise
interfered with, plaintiff's legal mail:

> 105. The procedure in the H-1 unit for inmate's to
> send out over-weight legal correspondence [here, 300
> interrogatories and request for admissions in
> plaintiff's civil action] is to hand it to the
> counselor un-sealed so that it could be inspected
> before it is sent out, at that time that the
> interrogatories were sent out an argument ensued
> regarding counsel Skribiski, reading the privileged
> documents and also because plaintiff was denying this
> counselor's advances for intimate contact.

[Doc. #80 at ¶105 (sic) (alteration added)]. Likewise,
plaintiff's "claims for relief" relating to the fifth count of

the Complaint make no claims relating to any First Amendment right to the free flow of mail, but rather, seek relief for Skribiski's alleged retaliation and impeding plaintiff's access to the Courts, see id. at ¶¶147(A)-(C), claims which have either been abandoned or dismissed by the Court. There is no mention in the claims for relief as to Count Five of interference with mail. See Doc. #80 at ¶¶147, 147(A), 147(B), 148. Indeed, the Complaint suggests that plaintiff was familiar with, and did not object to, the practice of reviewing the contents of oversized outgoing legal mail. [Doc. #80 at ¶105].

The only source of support for what plaintiff now asserts is a claim in Count Five that Skribiski interfered with his legal mail in violation of his First Amendment rights, is plaintiff's affidavit. There, plaintiff avers in a completely conclusory fashion that defendant Skribiski "read" both his outgoing and incoming legal mail "on more than ten occasions[.]" [Doc. #174-2, Leniart Aff. at ¶¶30, 31].

Turning first to plaintiff's assertion in his affidavit that defendant Skribiski read his incoming legal mail on more than ten occasions, such statements are entirely self-serving and not supported by any personal knowledge, or other evidence in the record. There is no claim that plaintiff witnessed Skribiski reading his incoming legal mail or that he has any first-hand knowledge that in fact occurred. Such allegations are

nowhere to be found in plaintiff's _verified_ Complaint. Nor did plaintiff testify at his deposition concerning such conduct.

The only evidence on this issue comes from defendant Skribiski's own deposition, in which she testified that she opened and _inspected_ plaintiff's incoming legal mail for contraband, but that she _did not read it_. [Doc. #174-5, Skribiski Depo., 13:12-14:7]. Accordingly, plaintiff's affidavit offering nothing more than conclusory statements that Skribiski read his incoming legal mail on more than ten occasions carries no weight. "As the Supreme Court has held, a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment, and 'it will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege.'" _United Magazine Co. v. Murdoch Magazines Distribution, Inc._, 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005) (quoting _Lujan v. Nat'l Wildlife Fed'n_, 497 U.S. 871, 888-90 (1990)), _aff'd sub nom._ _United Magazine Co., Inc. v. Curtis Circulation Co._, 279 F. App'x 14 (2d Cir. 2008).

With respect to plaintiff's outgoing legal mail, Skribiski similarly testified that she _inspected_, as opposed to read, plaintiff's outgoing legal mail. [Doc. #174-5, Skribiski Depo., 14:9-22]. Specifically, Skribiski stated that she "[t]humbed through [plaintiff's outgoing legal mail] and made sure there

34

was no contraband going out for safety." Id. at 14:11-12
(alterations added). Plaintiff's Complaint, as noted, alleges
only one instance of Skribiski reading his outgoing privileged
mail. See Doc. #80 at ¶105. Only plaintiff's affidavit claims
that Skribiski read his mail "[o]n more than ten occasions[.]"
[Doc. #174-2, Leniart Aff. at ¶31]. Again, the affidavit is
entirely self-serving and not supported by any claim of personal
knowledge, or other evidence in the record. Further, plaintiff
did not testify at his deposition concerning any such conduct.[12]
"[A] party may not create an issue of fact by submitting an
affidavit in opposition to a summary judgment motion that, by
omission or addition, contradicts the affiant's previous
deposition testimony." Hayes v. New York City Dep't of Corr., 84
F.3d 614, 619 (2d Cir. 1996) (collecting cases)).

Even if the Court credits plaintiff's allegation in the
Complaint that defendant Skribiski read his outgoing legal mail
on one occasion, that would not be sufficient to establish a
First Amendment violation. See Davis, 320 F.3d at 351 ("[A]n
isolated incident of mail tampering is usually insufficient to

---

[12] The deposition transcript provided to the Court in support of
plaintiff's opposition to the motion for summary judgment
concludes with a comment by defendants' counsel that Count Five
had not yet been addressed, and the parties would continue the
deposition at another time. [Doc. #174-3, Leniart Depo., 116:5-
11]. No evidence relating to any continued deposition has been
provided, though plaintiff has had numerous opportunities and
several months to supplement the record if necessary.

establish a constitutional violation."). Plaintiff does not
claim that the mail Skribiski read was censored or confiscated,
only that it was read, and tampering with prisoner mail is
actionable only if there is "an ongoing practice of censorship
unjustified by a substantial government interest[.]" Id.

Plaintiff emphasizes that defendant Skribiski "violated the
Connecticut Regulations on outgoing legal mail when she required
the Plaintiff to give her his outgoing legal mail unsealed."
[Doc. #174-2, Leniart Aff., at ¶32]. That may be true. It would
not, however, mean that a constitutional violation had
necessarily occurred. The Connecticut DOC maintains regulations
concerning the handling of inmate legal mail providing that
outgoing privileged correspondence

> shall be inserted into an envelope clearly identifying
> a privileged correspondence addressee as enumerated in
> Subsection (e) of Section 18-81-28 and sealed by the
> inmate. Outgoing privileged correspondence shall not
> be opened, nor read. Each facility shall provide a
> special    mailbox    for    unfranked    privileged
> correspondence directed toward Department officials[.]

Conn. Agencies Regs. §18-81-35 (2015) (hereinafter "DOC Reg.
18-31-35"). In her deposition, defendant Skribiski admitted that
she did not follow the letter of DOC Reg. 18-81-35. However, "a
violation of State law or regulations does not automatically
rise to the level of a constitutional violation." Gill v. Smith,
283 F. Supp. 2d 763, 777 (N.D.N.Y. 2003) (citing Young v. County
of Fulton, 160 F.3d 899, 902 (2d Cir.1998) (violation of state

law is not the "benchmark" for determining whether a constitutional violation has occurred); Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (state law violation does not necessarily rise to the level of a constitutional violation)); see also Stahl York Ave. Co., LLC v. City of New York, No. 15CV2000, 2016 WL 860431, at *3 (2d Cir. Mar. 7, 2016) ("[T]he mere violation of a state [law] does not automatically give rise to a violation of federal Constitutional rights." (quoting Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 55 (2d Cir. 1985))).

Indeed, the Second Circuit has upheld a New York Department of Correction policy, on what appears to be First and Sixth Amendment grounds, permitting precisely the type of inspection conducted by Skribiski. See Wilkinson v. Skinner, 462 F.2d 670 (2d Cir. 1972). The policy approved there provided that outgoing "special correspondence," including legal mail, "may be examined in the presence of the prisoner to insure absence of contraband prior to mailing but shall not be read or censored." Id. at 672 n.3. The Court concluded:

> Clearly the regulation forbids examination or censorship of the content of such correspondence, even while it permits inspection for contraband, in the presence of the detainee. Such a provision adequately protects the sixth amendment right of detainees to effective assistance of counsel and precludes the official censorship or the reading that may so adversely affect the [] inmate's free exercise of the right to consult with counsel.

Id. at 672.

In response to a motion for summary judgment, the nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). This plaintiff has failed to do. Plaintiff's allegations do not establish a viable First Amendment claim against Skribiski. Therefore, the Court **GRANTS** defendants' motion for summary judgment as to any claimed First Amendment violation against defendant Skribiski.

## VI.   Conclusion

Therefore, for the reasons stated, defendants' Motion for Summary Judgment [**Doc. #163**] is **GRANTED.** The Clerk of the Court is directed to enter judgment in favor of the defendants.

SO ORDERED at New Haven, Connecticut, this 31st day of March 2016.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
